UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID PILL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TIME INC., RICHARD BATTISTA, DAVID A. BELL, JOHN M. FAHEY, MANUEL A. FERNANDEZ, DENNIS J. FITZSIMONS, BETSY D. HOLDEN, KAY KOPLOVITZ, RONALD S. ROLFE, DANIEL L. ROSENSWEIG, KATIE J. STANTON, and MICHAEL P. ZEISSER, <br><br> Defendants. | Case No.: <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff, David Pill ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 26, 2017 (the "Proposed Transaction" or "Merger"), pursuant to which Time Inc. ("Time" or the "Company") will be acquired by Meredith Corporation ("Parent") through Parent's wholly owned subsidiary, Gotham Merger Sub, Inc. ("Merger Sub") (Parent and Merger Sub are collectively referred to herein as "Meredith").

2. On November 26, 2017, Time's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Meredith. Pursuant to the terms of the Merger Agreement, Meredith commenced a tender offer (the "Tender Offer") to purchase all of the outstanding shares of Time

1

common stock for $18.50 per share in cash (the "Offer Price"). The Tender Offer commenced on December 12, 2017, and is set to expire "one minute after 11:59 p.m., New York City time, on January 10, 2018." (Solicitation Statement, defined immediately below, at page 1.)

3.     On December 12, 2017, Defendants filed a Solicitation/Recommendation Statement on Form 14D-9 (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.[1]  As described herein, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9(d) ("Rule 14d-9).

4.     Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, and maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court

---

[1] On December 20, 2017, Time filed an Amendment No. 1 to the Solicitation Statement on Form 14D9/A with the SEC (the "Amendment"). The Amendment makes no material changes to the Solicitation Statement and fails to cure any of the material omissions discussed herein.

2

permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because Time maintains its principal executive offices in this District; each Defendant transacted business in this District, has extensive contacts within this District, or resides here; and a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously through all times relevant hereto, the owner of Time common stock.

9. Defendant Time is a Delaware corporation with its principal executive offices located at 225 Liberty Street, New York, N.Y. Time's common stock is listed and traded on The New York Stock Exchange under the symbol "TIME."

10. Defendant Richard Battista ("Battista") is the Company's President, Chief Executive Officer ("CEO"), and has served as a director of the Company since September 2016.

11. Defendant David A. Bell ("Bell") has served as a director of the Company since 2014.

12. Defendant John M. Fahey, Jr. ("Fahey") is the non-executive Chairman of the Board and has served as a director of the Company since 2014.

13. Defendant Manuel A. Fernandez ("Fernandez") has served as a director of the Company since 2014.

14. Defendant Dennis J. FitzSimons ("FitzSimons") has served as a director of the Company since 2014.

15. Defendant Betsy D. Holden ("Holden") has served as a director of the Company since 2014.

16. Defendant Kay Koplovitz ("Koplovitz") has served as a director of the Company since 2014.

17. Defendant Ronald S. Rolfe ("Rolfe") has served as a director of the Company since 2014.

18. Defendant Daniel L. Rosensweig ("Rosensweig") has served as a director of the Company since July 2017.

19. Defendant Katie J. Stanton ("Stanton") has served as a director of the Company since August 2017.

20. Defendant Michael P. Zeisser ("Zeisser") has served as a director of the Company since 2016.

21. Defendants identified in paragraphs 10-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

22. Non-party Parent is a media and marketing services company that utilizes multiple distribution platforms—including broadcast television, print, digital, mobile and video—to provide content to consumers and to deliver advertising from its marketing partners. Parent is an Iowa corporation with its principal executive offices located at 1716 Locust Street, Des Moines, Iowa 50309. Parent's common stock is listed and traded on the New York Stock Exchange under the ticker symbol "MDP."

23. Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

**SUBSTANTIVE ALLEGATIONS**

24. Time is a multi-platform consumer media company that engages over 230 million consumers globally every month. The Company's brands include *People*, *Time*, *Fortune*, *Sports*

4

*Illustrated*, *Instyle*, *Real Simple*, *Southern Living*, *and Travel + Leisure*, as well as approximately 60 international brands. The Company also boasts growing media platforms and extensions, including digital video, television, licensing, international markets, paid products and services and live events.

25. Although the Solicitation Statement provides Time's stockholders with an overview of the Proposed Transaction, it omits certain critical information, which renders portions thereof materially incomplete and/or misleading, in violation of the Exchange Act provisions discussed herein. As a result, Time's stockholders lack material information necessary to allow them to make an informed decision concerning whether to tender their shares.

26. In particular, the Solicitation Statement contains materially incomplete and/or misleading information concerning, *inter alia*: (i) the valuation analyses performed by Time's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") (collectively, the "financial advisors"), in support of their fairness opinions, including certain of the projections upon which the financial advisors relied; (ii) potential conflicts of interest among Company insiders and Morgan Stanley; and (iii) the background of the merger negotiation and sales process.

***Material Omissions Concerning the Financial Advisors' Valuation Analyses***

27. A financial advisor's opinion of financial fairness for a proposed transaction is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders. Thus, it is imperative for stockholders to be able to understand what factors might influence a financial advisor's analytical efforts.

28. The Solicitation Statement provides that in rendering their fairness opinions, the financial advisors conducted various analyses that relied upon Time's management's financial

projections (the "Long-Range Plan"), as well as Wall Street consensus estimates for the Company (the "Consensus Street Case"). However, the Solicitation Statement fails to disclose material information concerning each of these, including providing *no* information about the Consensus Street Case estimates.

29. The Solicitation Statement's omission of the Consensus Street Case estimates renders its discussion of the following financial analyses—each of which explicitly relies upon the Consensus Street Case estimates—materially misleading: (i) the financial advisors' *Leveraged Buyout Analyses* (Solicitation Statement at pages 41-42); (ii) the financial advisors' *Public Company Multiples* analyses (Solicitation Statement at pages 38-39); (iii) Morgan Stanley's *Discounted Cash Flow Analysis* (Solicitation Statement at pages 40-41); and (iv) Morgan Stanley's *Present Value of Future Stock Price Analysis* (Solicitation Statement at page 40).

30. Although the Solicitation Statement discloses certain line items in the Long-Range Plan estimates, it fails to disclose the Company's future unlevered free cash flows ("UFCFs"). The financial advisors utilized the future UFCFs in conducting their *Discounted Cash Flow* ("DCF") *Analyses*. The Solicitation Statement provides that "Morgan Stanley calculated a range of implied values per Share using the estimated future unlevered free cash flows reflected in the Long-Range Plan . . . for the period from September 30, 2017 through December 31, 2022" (Solicitation Statement at page 40), and "BofA Merrill Lynch calculated a range of implied values per Share using the estimated future unlevered free cash flows reflected in the Long-Range Plan for the period from September 30, 2017 through December 31, 2021" (Solicitation Statement at page 41).[2]

---

[2] In conducting its DCF analysis, Morgan Stanley also utilized estimated future UFCFs from the Consensus Street Case, which, as discussed above, was entirely omitted from the Solicitation Statement.

6

None of these future UFCFs are disclosed.[3]

31.     The Solicitation Statement also fails to disclose the projected values of the line items necessary to calculate the future UFCFs utilized in Morgan Stanley's DCF analysis. Morgan Stanley defined UFCFs as "Adjusted OIBDA [Operating Income Before Depreciation and Amortization] after stock based compensation, less tax, capital expenditures and changes in net working capital." (Solicitation Statement at page 40). However, other than providing projected Adjusted OIBDA, the Solicitation Statement does not disclose any of the annual projections for the other line items—*i.e.*, (i) stock based compensation, (ii) taxes, (iii) capital expenditures, and (iv) changes in net working capital—for the period from 2017 through 2021. Moreover, the line item projections for the year 2022, which Morgan Stanley "extrapolated based on the direction of the management of the Company," (Solicitation Statement at page 40), are completely omitted—even with respect to projected Adjusted OIBDA.[4]

32.     Similarly, the Solicitation Statement fails to disclose the projected values of the line items necessary to calculate the future UFCFs utilized in BofA Merrill Lynch's DCF analysis. BofA Merrill Lynch defined UFCFs as "Adjusted OIBDA after stock based compensation, less taxes, capital expenditures, changes in net working capital, pension costs, restructuring costs, and other investing activities, plus net proceeds for divested assets." (Solicitation Statement at page 41). However, other than providing projected Adjusted OIBDA, the Solicitation Statement does not disclose any of the annual projections for the other line items—*i.e.*, (i) stock based compensation, (ii) taxes, (iii) capital expenditures, (iv) changes in net working capital, (v) pension

---

[3] The Long-Range Plan includes the projected "Free Cash Flows" for Time (Solicitation Statement at page 47), but the term "Free Cash Flow" as used in the Solicitation Statement is distinct from future UFCFs. Even the formulas for calculating each of these terms are different.

[4] There is also no detail provided as to *how* Morgan Stanley conducted such extrapolation.

costs, (vi) restructuring costs, (vii) other investing activities, or (viii) net proceeds for divested assets.

33. The non-disclosed information discussed in ¶¶ 28-32, above, would be material to Time shareholders in deciding whether to tender their shares, as the lack of disclosure of the individual line items and inputs used by the financial advisors in their financial analyses (and in management's projections) prevents shareholders from understanding the context of the figures or considering whether any of the inputs thereto or ranges derived therefrom are anomalous.

34. With respect to Morgan Stanley's DCF analysis, the Solicitation Statement (at pages 40-41) fails to disclose (in addition to the above-discussed omissions concerning the future UFCFs and Consensus Street Case estimates): (i) certain of the inputs and assumptions underlying Morgan Stanley's calculation of the discount rate range of 6.6%-7.6%, including the beta and risk free rate; (ii) the terminal value(s) Morgan Stanley used in its analysis; and (iii) whether Morgan Stanley incorporated Time's $239 million in net operating losses ("NOLs") into its analysis.

35. Similarly, with respect to BofA Merrill Lynch's DCF analysis, the Solicitation Statement (at page 41) fails to disclose (in addition to the above-discussed omissions concerning the future UFCFs): (i) certain of the inputs and assumptions underlying BofA Merrill Lynch's calculation of the discount rate range of 7.5%-9.0%, including the beta and risk free rate; and (ii) whether BofA Merrill Lynch incorporated Time's $239 million in net operating losses ("NOLs") into its analysis.

36. With respect to the financial advisors' respective *Present Value of Future Stock Price Analyses* (in addition to the above-discussed omission concerning the Consensus Street Case estimates for Morgan Stanley's analysis), the Solicitation Statement (at page 40) fails to disclose the inputs and assumptions underlying the respective discount rates of 10.5% (used by Morgan

8

Stanley) and 11.0% (used by BofA Merrill Lynch).[5]

37.     With respect to the financial advisors' respective *Precedent Premiums Paid Analyses*, the Solicitation Statement (at page 42) fails to disclose: (i) the list of transactions that the financial advisors "selected" in conducting their analyses; (ii) the premiums the financial advisors observed for each such transaction; and (iii) the low, mean, median or high premiums the financial advisors observed for the group of selected transactions.

38.     The non-disclosed information discussed in ¶¶ 34-37, above, would be material to Time shareholders in deciding whether to tender their shares, as the real informative value of the financial advisor's work is not in its conclusion, but in the valuation analyses that buttresses that result. When a financial advisor's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

*Material Omissions Concerning Potential Conflicts of Interest*

39.     The Solicitation Statement also fails to disclose material information regarding potential conflicts of interest that may have tainted Merger negotiations.

40.     With respect to Time's executive officers, directors, and other members of management, the Solicitation Statement does not disclose whether those individuals will remain employed with the post-Merger entity after completion of the Merger.[6] Nor does the Solicitation

---

[5] The Solicitation Statement (at page 40) states that, in conducting its *Present Value of Future Stock Price* analysis, Morgan Stanley applied Adjusted OIBDA multiples ranging from 5.0x to 6.0x "derived from the Comparable Company Trading Analysis discussed above." No such analysis is discussed in the Solicitation Statement. This statement was likely referring to the Solicitation Statement's prior discussion of the "*Public Company Multiples*" analysis.

[6] The November 26, 2017 Press Release announcing the Merger states that, "[u]pon the closing, it is expected that Battista will leave the Company," but that Press Release mentions nothing about Time's other executive officers, directors, and other members of management, and this qualified statement is not elaborated upon or clarified in the Solicitation Statement.

Statement indicate whether any employment related discussions or negotiations have occurred between Meredith and such individuals. Although the Solicitation Statement (at page 10) states that Meredith "will cause the Surviving Corporation and its subsidiaries to . . . provide each employee who continues to be employed with Meredith or any of its subsidiaries . . . with employee benefits . . . .," it does not disclose the identities of those employees; the terms of their continued employment; and whether Meredith engaged in discussions or negotiations with specific Time employees concerning continued employment with the post-Merger entity during Merger negotiations. Communications regarding post-transaction employment and Merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders, as they would indicate potential conflicts of interest.

41. With respect to Morgan Stanley's potential conflicts of interest, the Solicitation Statement provides (at page 44) that, during the past two years, Morgan Stanley has received fees of between $1-$2 million for providing financing services to Time, and fees of between $12-$13 million for providing financial advisory services to Koch Industries Inc. (an affiliate of a significant source of financing for Meredith in connection with the Proposed Transaction). However, the Solicitation Statement does not disclose whether Morgan Stanley has performed services for Meredith during the past two years, and, if so, the amount of fees it received for such services. By contrast, the Solicitation Statement (at page 45) states that BofA Merrill Lynch has performed investment and corporate banking services for Meredith during the past two years and received fees of less than $1 million for such services. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, as well as their influence over the members of boards of directors and management during merger

negotiations.

42. The non-disclosed information discussed in ¶¶ 40-41, above, would be material to Time shareholders in deciding whether to tender their shares, as shareholders need to understand the motivations and conflicts that could potentially influence or prevent fiduciaries from acting solely in their best interests and that of the Company.

*Material Omissions Concerning the Merger Negotiation and Sales Process*

43. The Solicitation Statement provides that, during the Merger negotiation and sales process, the Company entered into "standstill agreements" with potential acquisition partners, including Meredith. However, not all of the agreements were the same. Specifically, "the standstill agreements with Party C and Party C's principal equity investor (as well as those with Party B and Party L), unlike the other standstills entered into by the Company, would not automatically terminate upon entry into a definitive merger agreement." (Solicitation Statement at page 30.) Also, although the Solicitation Statement (at page 30) states that "the standstills with Party C and Party C's principal equity investor permitted such parties to make confidential requests for waivers," it does not disclose whether this option was included in the standstills with Party B and Party L. The disclosure of the terms of these standstill provisions would be material to Time shareholders, as they need to be fully informed about whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Time common stock (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

45. This action is properly maintainable as a class action for the following reasons:

46. The Class is so numerous that joinder of all members is impracticable. As of December 11, 2017, there were 99,622,569 shares of Time common stock issued and outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

47. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(d), 14(e), and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Solicitation Statement as currently composed.

48. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

49. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

50. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

51. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

52. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### <u>COUNT I</u>
### Claim for Violation of Section 14(d) of the Exchange Act
### and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

53. Plaintiff realleges each of the allegations Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

55. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides, in pertinent part: "Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

56. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides, in pertinent part: "Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof."

57. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to: "Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

58.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

59.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing the statements in the Solicitation Statement to be materially incomplete and/or misleading.

60.     The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

61.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d) of the Exchange Act and SEC Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class have sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Claim for Violation of Section 14(e) of the Exchange Act
### (Against All Defendants)

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     Section 14(e) of the Exchange Act provides, in pertinent part: "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation

14

of security holders in opposition to or in favor of any such offer, request, or invitation."

64. Defendants prepared, reviewed, filed and disseminated the false and misleading Solicitation Statement to Time's shareholders.

65. In doing so, Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants, and the Individual Defendants in particular, did this because they intended to enrich themselves at the expense of the Company and its shareholders.

66. Indeed, the Individual Defendants and the Company's executive officers have entered into the Proposed Transaction in order to secure unique financial benefits for themselves that are not available to Time's public shareholders. Such benefits include millions of dollars in accelerated or vesting stock options, restricted stock units ("RSUs"), deferred stock units ("DSUs"), and unvested performance stock units ("PSUs"), including those granted under the Company's Long-Term Incentive Outperformance Program. *See* Solicitation Statement at 15 (table). The collective value of such payments to Defendant Battista, for example, totals over $6 million. Further, if they are terminated in connection with the Proposed Transaction, Time's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation. *See* Solicitation Statement at 13 (table). The collective value of such payments to Defendant Battista, for example, totals over $15 million.

67. The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

68. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing the financial advisors' complete financial analyses purportedly summarized in the Solicitation Statement.

69. Defendants also knew that Plaintiff and the other members of the Class would rely upon the Solicitation Statement in determining whether to tender their shares.

70. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and the other members of the Class have sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares. Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### Claim for Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

71. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Time within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Time, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

73. Each of the Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

75. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(d) and 14(e) of the Exchange Act, and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

77. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed. Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer and/or Proposed Transaction;

C. In the event Defendants consummate the Proposed Transaction, directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 21, 2017**WOLF POPPER LLP**

By: */s/ Carl L. Stine*
Carl L. Stine
Joshua W. Ruthizer
Robert S. Plosky
845 Third Avenue
New York, New York 10022
Tel:  212-759-4600
Fax:  212-486-2093
Email: cstine@wolfpopper.com
   jruthizer@wolfpopper.com
   rplosky@wolfpopper.com

*Attorneys for Plaintiff*

## PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, David Pill, hereby state:

1. I have reviewed the complaint against Time Inc. ("Time") and certain of its directors and officers. I have authorized the filing of a complaint and lead plaintiff motion on my behalf.

2. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

3. I currently own 8 Time shares, which I bought on the following dates and for the following per share prices:

| Date | # of shares purchased | # of shares sold | Price per share |
|---|---|---|---|
| 6/9/14 | 8 | — | 9 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | 8 | — | — |

4. I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5. During the three-year period preceding the date of signing this certification, I have not moved to serve, and have not been appointed to serve, as a representative on behalf of a class in any private action arising under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20 day of December, 2017

By: _____
David Pill